UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

IBUKUN OGUNBEKUN, as Limited Conservator
for the Estate of OLUWATOSIN OGUNBEKUN,
an incapacitated person,

                         Plaintiff,          Index No. 15-CV-06332 (CJS-JWF)

-vs-

TOWN OF BRIGHTON, BRIGHTON POLICE
DEPARTMENT, JULIE KNUTOWICZ and
RENEE (STICKLES) FISCHER,

                         Defendants.
_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

 

**TULLY RINCKEY, PLLC**
By: Eugene Welch, Esq.
*Attorneys for Defendant Town of Brighton*
Office and Post Office Address
400 Linden Oaks, Suite 110
Rochester, New York 14625
Telephone: (585) 899-1458

1

## PROCEDURAL HISTORY

On May 28, 2015 Ibukun Ogunbekun attempted to commence a lawsuit on behalf of his daughter, "Ms. O" (Oluwatosin Ogunbekun) by filing a Complaint signed by him. (Docket # 1). By Order dated June 5, 2015, this Court determined that Ibukun Ogunbekun ("Ogunbekun") did not have authority to proceed with the lawsuit as he was not an attorney and therefore could not represent his daughter as a *pro se* party. (Docket #3). The Order gave the daughter until June 30, 3015 to either sign the Complaint on her own, obtain counsel, or discontinue the action. On June 29, 2015, a new Complaint in the name of Oluwatosin Ogunbekun was filed and signed by Oluwatosin (she signed as "Tosin", which was her nickname). (Docket #).

Ibukun Ogunbekun was named as conservator for Oluwatosin Ogunbekun and the parties then stipulated to the filing of a Second Amended Complaint on December 15, 2018 to reflect this status. (Docket #4). The Second Amended Complaint was filed by Rafael O. Gomez, Gomez & Becker, LLP, on behalf of Ibukun Ogunbekun, as Limited Conservator for the Estate of Oluwatosin Ogunbekun, an incapacitated person. (Docket # 32-1). On December 31, 2018, Plaintiff filed a Third Amended Complaint and a motion to amend the Second Amended Complaint to remove the John Doe defendants and substitute Officers Stickles and Knutowicz. (Docket #36). In a Report and Recommendation entered July 31, 2019 (Docket #42), the Honorable Jonathan W. Feldman held that the operative complaint in the matter was the Second Amended Complaint filed on December 15, 2018 (Docket #32-1) and allowed the individual officers to be added to the caption. The Report and Recommendation was adopted by this Court on August 21, 2019 (Docket #43).

Defendant Town of Brighton answered the Second Amended Complaint. (Docket #44). Plaintiff's counsel, Rafael O. Gomez did not file a motion to allow for late service of the individual officers pursuant to Fed.R.Civ. Proc. 4(m) and instead moved to withdraw as counsel. (Docket

#51). Thereafter, Plaintiff retained new counsel, Anna Marie Richmond. Ms. Richmond moved for leave to serve the individual officers, which was granted. (Docket #62, 72). The individual officers then answered. (Docket #80, 81).

The Second Amended Complaint listed two causes of action: 1) "Constitutional and Civil Rights Pursuant to 24 U.S.C. 1983, 1988, violation of Fourth Amendment Rights against unreasonable seizures" and 2) "Practices and Policies proximately causing constitutional injury pursuant to 42 USC 1983, 1988 Violation of Fourth Amendment". (Docket #32-1). All Defendants are now moving for summary judgment as no material facts exist that require a trial in this matter.

## SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "A party asserting that a fact … cannot be genuinely disputed must support that assertion by … citing to particular parts of materials in the record …" Fed.R.Civ.P. 56(c)(1). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. A non-movant cannot oppose a properly supported summary judgment motion with bald assertions that are not supported by the record. See, *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999). Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record or showing that the materials cited by the movant are

3

inadmissible or do not establish the absence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The underlying facts must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Here, the undisputed facts show that Tosin was properly arrested pursuant to the Mental Hygiene Law. She was then prosecuted for Resisting Arrest and Harassment 2nd and she accepted an Adjournment in Contemplation of Dismissal (ACD) on both charges. Tosin's father, by his own admissions, did not see the vast majority of the interactions because he was not outside for the first interactions and then he arrived at 84 Wintergreen Way after some of the interactions. The multiple depositions provided by the eyewitnesses establish that Tosin was out of control, that she was attempting to enter a stranger's home, that she grabbed Officer Stickles by her ponytail and pulled both officers onto the concrete floor of the porch, and that she was screaming at and fighting the officers at the scene.

## ARGUMENT

### A. There Are No Valid State Tort Claims

The Second Amended Complaint contains a section of facts entitled "Defendants' Malicious Prosecution of Ms. O." Second Amended Complaint, ¶¶ 22 – 26. (Docket #32-1). Under New York law, a notice of claim is a condition precedent for suing a municipality or its employees for a tort. See N.Y. Gen. Mun. Law § 50-e(1)(a); *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 689 (1981). No notice of claim was ever filed with the Town of Brighton with regard to these incidents. Therefore, any potential state tort claims, such as malicious

prosecution, false arrest, and use of excessive force, are barred.

### B. Plaintiff has Failed to Establish a Valid Monell Claim Against the Town

Plaintiff asserts a Monell claim against all defendants in the First Cause of Action. It appears that the claim against the Town is based upon a claim of excessive force, false arrest and failure to train. As this Court stated in *Strobridge v. City of Elmira*, No. 20-CV-1125S (W.D.N.Y. Feb. 28, 2022), *citing* its observations in *Romanac v. Town of Cheektowaga*, No. 17CV334, 2021 WL 409859, at *9-10 (W.D.N.Y. Feb. 5, 2021) (Skretny, J.), "a municipality may not be held liable under §1983 solely because it employs a tortfeasor, " *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). As observed by the Supreme Court, "while Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of others " (citing [*Monell v. Department of Soc. Serv.*, 436 U.S. 658, 665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)] *Monell, supra*, at 665- 683, 98 S.Ct., at 2022-2032). We have consistently refused to hold municipalities liable under a theory of respondeat superior." Id. (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). This also is based in part on the text of that section that imposes liability upon the person who deprived a federal right, *id.*

To establish a claim against a municipality under §1983, a Plaintiff must allege that the actions were taken under color of law; there was a deprivation of constitutional or statutory rights; causation; and damages. *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); see also *Batista v. Rodriquez*, 702 F.2d 393, 397 (2d Cir. 1983); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell, supra*, 436 U.S. at 694 (plaintiff must identify the municipal policy or custom that caused plaintiff's injury). That policy or custom must

5

be "the moving force" behind a violation of federal rights, *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Plaintiff also needs to show that the policy or custom proximately caused the deprivation, *Owen v. City of Independence*, 445 U.S. 622, 633, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980)). "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of New York*, 228 F.Supp.2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 Fed.Appx. 827 (2d Cir. 2003). Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton v. City of N.Y.*, 566 F.Supp.2d 256 (S.D.N.Y. 2008)], 566 F.Supp.2d at 271; see also *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle*, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation."). "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (i.e., a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." *Newton*, 566 F.Supp.2d at 271 (footnote omitted). *Dellutri v. Village of Elmsford*, 895 F.Supp.2d 555, 565 (S.D.N.Y. 2012). A "general and conclusory allegation of a municipal policy or custom fails to state a facially plausible Monell claim." *Valdiviezo v.*

*Boyer*, 752 Fed.Appx. 29, 31 (2d Cir. 2018); B*ryant v. Monroe County*, No. 19CV6474, 2022 WL 103889, at *7 (W.D.N.Y. Jan. 11, 2022) (Siragusa, J.).

Plaintiff does not identify any policy, practice, or custom that led to Tosin's injuries. The Plaintiff also fails to state any other instances of such a policy, custom, or practice. Further, the Plaintiff does not identify a Town policymaker who is responsible for Plaintiff's injuries. The Town has policies in place related to in the form of General Orders for police interactions with individuals with mental health issues. [See Rule 56 Statement, ¶¶30-35 and Exhibits G and H]. Plaintiff's conclusory statements do not provide an inference that the manner of enforcement of Mental Hygiene Law arrests deprived Tosin of her constitutional rights. Plaintiff merely focuses upon the actual incident without citing other instances of a policy, custom, or practice. This failure is fatal to the Monell claim against the Town.

In addition, Ogunbekun stated he did not know of any training that was received by Town police officers related to Mental Hygiene arrests. [See Rule 56 Statement, ¶¶117-120, Exhibit B]. The uncontested facts are that Officer Stickles had received 40 hours of mental health training. [See Rule 56 Statement, ¶29, Exhibit F]. She also had interacted with the Decedent in the past and was able to use that training to diffuse the situation such that no mental hygiene arrest was necessary on that occasion. [See Rule 56 Statement, ¶¶37-39, Exhibits B and F]. In fact, on the day in question, Officer Stickles was able to convince Tosin to return to her home in the first interaction with her that day. [See Rule 56 Statement, ¶42, Exhibits B and F]. However, Tosin then left the home again (without any intervention by her father). [See Rule 56 Statement, ¶¶46-47, Exhibits B and F]. Her father opted not to follow her because Tosin was mad at him and was not a witness to much of what occurred at 84 Wintergreen Way. [See Rule 56 Statement, ¶¶48-50, Exhibit B]

Plaintiff's allegations that the Town had a custom, policy, and practices of failing to train officers in conducting mental hygiene arrests cannot meet the high standard necessary to sustain a *Monell* claim. As noted above, the Town of Brighton did provide such training. In addition, Officer Stickles had used her training to successfully interact with Tosin in the past. Ogunbekun admitted he was unaware if the Town of Brighton provided training or not. [See Rule 56 Statement, ¶117, Exhibit B]. Ogunbekun further admitted that his daughter's mental health condition had become much worse, which he attributed to a prior stay Tosin had at Strong Memorial Hospital. [See Rule 56 Statement, ¶¶11-14, Exhibit B].

Plaintiff has again merely alleged a single practice of failure to train leading to the violations of Tosin's rights in this one instance. The Town is not responsible under §1983 for an isolated unconstitutional act. *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003). "Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality],'" *Dellutri, supra*, 895 F.Supp.2d at 565 (quoting *Newton, supra,* 566 F.Supp.2d at 271). Merely alleging the failure to follow existing policy fails to state a *Monell* claim, *Ruiz v. Westchester Cnty.*, No. 18-CV-7007, 2020 WL 4340788, at *9 (S.D.N.Y. July 28, 2020); *Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) (alleged failure to follow a policy "is the antithesis of a link between policy and action"). To support a failure to train claim "Plaintiff must allege facts which support an inference that the County failed to train its employees, that it did so with deliberate indifference, and that the failure to train caused [the] constitutional injuries. *See Treadwell v. County of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016)," *Ruiz, supra*, 2020 WL 4340788, at *8. The Plaintiff must point to "a specific deficiency in the municipality's training," *id.* (quoting *Tieman v. City of Newburgh*, No.

13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015)). "A failure to train constitutes a policy or custom that is actionable under §1983 only where 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers ... can reasonably be said to have been deliberately indifferent to the need.' *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 [109 S.Ct. 1197, 103 L.Ed.2d 412] (1989) (footnote omitted)." *Ruiz, supra*, 2020 WL 4340788, at *8. That clearly has not been established here where Officer Stickles had received training, she had been able to deal with Tosin in the past, and she was able to convince Tosin to return to her home in the first instance. *See, supra.*

Plaintiff cannot point to any alleged specific deficiency in training of the officers as Plaintiff erroneously supposed there was none. Further, the Plaintiff cannot show any deliberate indifference by the Town to training as is required under the relevant caselaw. As such, there is no issue of material fact as to the Town's vicarious liability and summary judgment must be granted to the Town for the First Cause of Action.

### C. Plaintiff has Failed to Establish a Valid Claim Against the Individual Officers

#### 1. The Individual Officers Are Entitled to Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Harris v. County of Nassau*, 581 F. Supp. 2d 351, 356 (E.D.N.Y. 2008) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Qualified immunity bars an action against a government official where the conduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harris*, 581 F. Supp. 2d at 356 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In the case of a mistake "[t]he

9

protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (receding from the rigid application of qualified immunity as stated in *Saucier v. Katz, supra*, but leaving the general principle of qualified immunity intact.)

There has been no showing by the Plaintiff that any force actually used was excessive. The Second Amended Complaint does not address Tosin's actions in talking nonsensically, confronting workers on private property, her threat about her father, Tosin's trespassing on private property and attempting to enter the house such that the resident had to lock her door and she called 9-1-1, Tosin's yelling, Tosin's grabbing of Officer Stickle's ponytail and dragging both Officer Stickles and Knutowicz onto the concrete floor of the porch, her continued resistance even after being handcuffed, the need for an EMT to sit on her legs in an attempt to have her stop fighting and resisting, and her flailing and fighting as additional officers placed her on the gurney so she could be loaded into the ambulance. [See Rule 56 Statement, ¶¶51-102, Exhibits B, E, F, G, H, I, J].

Tosin was arrested for resisting arrest and harassment 2nd as a result of her actions. [See Rule 56 Statement, ¶121, Exhibit Q]. To sustain an excessive force claim "the force used by the defendant generally must be more than de minimis in order for the plaintiff's claim to be actionable." *Jennejahn v. Vill. of Avon*, 575 F. Supp. 2d 473, 478 (W.D.N.Y. 2008) (Payson, Magistrate Judge) (internal citations omitted). The alleged injuries of a small head laceration do "not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation." *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003). This is especially true where it was the result of Tosin's own conduct in resisting arrest by fighting, kicking, and grabbing Officer Stickle's ponytail and yanking Officer Stickle's

head about so violently that they both went to the ground.

Even if Tosin could show an injury sufficient to maintain her claim, summary judgment should still be granted because Officer Stickles and Knutowicz acted reasonably in the situation in question. "Claims arising from the use of force during an arrest are judged by the 'objective reasonableness' standard of the Fourth Amendment." *Jennejahn*, 575 F. Supp. 2d at 478. Officer Stickles was having her head violently yanked by Tosin which posed a direct threat to Officer Stickle's safety and that of the bystanders. Further, the safety of the resident of 84 Wintergreen Way was also an issue as Tosin was attempting to enter the home. The witnesses confirmed that Tosin repeatedly defied the officers' instructions to her. Simply placing the handcuffs on her after she had grabbed one of the Officer's ponytail and dragged both Officers to the ground and her continued fighting and kicking showed great restraint on the part of the Officers. They used what they believed to be the minimum necessary force in the situation.

The Second Circuit addressed what constitutes reasonable force in *Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017). In that case, the Court outlined the use of force as follows:

> This Court's opinion in *Brown II* summarized a number of undisputed facts material to Brown's excessive force claim. The two officers "were arresting Brown for disorderly conduct, a violation that[,] under New York law, is subject to a maximum punishment of 15 days in jail." *Brown II*, 798 F.3d at 101. "Officer Plevritis was 5'10" and weighed 215 pounds; Officer Naimoli was 5'7" and weighed 150-160 pounds; Brown was 5'6" and weighed 120 pounds." *Id.* "Officer Plevritis asked Brown to place her hands behind her back so that they could apply handcuffs, and she refused to do so." *Id.* "One of the officers kicked Brown's legs out from under her, causing her to fall to the ground." *Id.* "One officer succeeded in placing handcuffs on Brown's right wrist." *Id.* "Both officers struggled with Brown, forcing her body to the ground." *Id.* "Officer Plevritis used his hand to push Brown's face onto the pavement." *Id.* "Brown's left arm, without a handcuff, was under her as she fell to the ground." *Id.* "The officers endeavored to take hold of Brown's left arm and bring it behind her to complete the handcuffing." *Id.* "While on the ground, Brown did not offer her arms for handcuffing in part because she was trying to keep hold of her phone and wallet and reach for the scattered contents of her purse." *Id.* "Officer Plevritis twice administered a burst of pepper spray directly to Brown's face." *Id.* "The officers completed the handcuffing while

11

> Brown was still on the ground." *Id.* "Officer Naimoli was aware of techniques for applying handcuffs to a reluctant arrestee, other than taking a person to the ground." *Id.*

*Id.* This recitation of facts is very similar as to what happened in this case, except that in the *Brown* case, the plaintiff was also pepper sprayed during the arrest. In addition, here Tosin did not merely refuse to be subjected to handcuffing, she was also actively resisting by screaming, kicking and grabbing Officer Stickle's ponytail. The Second Circuit they agreed with the District Court that under these facts the officers were shielded from liability by their qualified immunity. Here, Tosin's conduct was even more extreme then in *Brown*. Tosin was warned multiple times to stop resisting and yet she continued to fight the officers. The contemporaneous comments of the witness, DeCastro, establish that the officers were having difficulty and that Tosin was overpowering the officers. [See Rule 56 Statement, ¶87, Exhibits M and N]. Tosin was resisting so violently that an EMT had to hold down her legs to assist the officers. [See Rule 56 Statement, ¶84, 89, Exhibits M and N].

Summary judgment should be granted with regard to Ogunbekun's excessive force claim relating to this use of force because the officers' actions were objectively reasonable in the situation, and because the officers could reasonably believe the force used was necessary and justified, and their actions are therefore subject to qualified immunity. Excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). One of the factors to consider in deciding whether the officers' actions were objectively reasonable is "whether the suspect poses an immediate threat to the safety of the officers or others." *Mroz v. City of Tonawanda*, 999 F. Supp. 436, 464 (W.D.N.Y., 1998). Here, both Officers' actions were objectively reasonable because of Ogunbekun's actions such that the officers were protecting themselves, the resident of 84 Wintergreen, the EMTs (one

12

of whom felt compelled to help restrain Tosin as she was still fighting even after going to the porch floor, and the bystanders who had earlier retreated indoors because of Tosin's harassment of them while they tried to work. The Officers only took those actions which were necessary to protect everyone at the scene and to subdue Tosin. The reasonableness of the Officers' actions is also supported by the fact that Tosin ultimately accepted an Adjournment in Contemplation of Dismissal to both the Resisting Arrest and Harassment 2nd charges.

Ogunbekun was not present the entire time as he had stayed back at home because of Tosin's agitation and anger at him. He drove up to the scene after some time. Ogunbekun stated that he never saw Tosin grab Officer Stickle's ponytail but admitted at his deposition that it was possible. [See Rule 56 Statement, ¶65, Exhibit B]. Multiple witness accounts and the Officers' statements that were given shortly after the incident all established that Tosin was resisting and refusing to follow instructions. It is not reasonable to accept Ogunbekun's bald assertions that Tosin had done nothing to warrant the mental hygiene arrest and that the force used was excessive. See *Casciani v. Nesbitt*, 659 F. Supp2d 427, 434 (W.D.N.Y. 2009) (Larimer, J.), *aff'd* 392 Fed.Appx. 887 (2d Cir. 2010)("It bears emphasis, though, that this standard does not simply require the court to draw *all* inferences in the nonmovant's favor, but all *reasonable* inferences. The issue is whether a reasonable jury could find for the nonmoving party. *See, e.g., Reed v. City of St. Charles, Mo.,* 561 F.3d 788, 791 (8th Cir. 2009) ("Although a district court must rule on a motion for summary judgment after viewing the facts in the light most favorable to the non-moving party, it is not required to accept unreasonable inferences or sheer speculation as fact") (internal quotation marks omitted); *Carney v. City and County of Denver,* 534 F.3d 1269, 1276 (10th Cir. 2008) ("Although our summary judgment standard requires us to view the facts in the light most favorable to the non-moving party, it does not require us to make unreasonable inferences in favor

of the non-moving party") (internal quotation marks and alterations omitted); *Caban Hernandez v. Philip Morris USA, Inc.,* 486 F.3d 1, 8 (1st Cir.2007) (on a motion for summary judgment, "we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however, that we ought to draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective") (citation omitted); *Berk v. St. Vincent's Hosp. and Med. Ctr.,* 380 F.Supp.2d 334, 342 (S.D.N.Y. 2005) (although court must construe facts in light most favorable to nonmoving party, "That does not mean, however, that a party can successfully oppose summary judgment on the basis of an unreasonable view of the facts") (quoting *Edwards v. Akzo Nobel,* 193 F.Supp.2d 680, 688 (W.D.N.Y. 2001)").

Granting qualified immunity is appropriate in this case. *See Williams v. Ontario County Sheriff's Dept.,* 662 F. Supp. 2d 321, 330 (W.D.N.Y. 2009). "[T]o deny summary judgment any time a material issue of fact remains on the excessive force claim-could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Saucier,* 533 U.S. at 202. "In particular, a defendant is entitled to summary judgment based on qualified immunity if the court finds that the asserted rights were not clearly established, or if the defendant adduces sufficient facts such that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not violate a federally protected right." *See Williams,* 662 F. Supp. 2d at 332.

Here there is no disputed material issue of fact with regard to the actual use of force. Officers Stickles and Knutowicz have stated that they believed the use of force was reasonable. Ogunbekun has not brought forward any evidence to show that the use of force against Tosin was

unreasonable. Summary judgment should be granted regarding the excessive force claims based on qualified immunity because the Officers' decision to use force "was not a decision that no officer of reasonable competence would have made in similar circumstances." *Williams*, 662 F. Supp. 2d at 330.

### 2. The Officers Did Not Use Excessive Force To Make A False Arrest

Summary judgment should be granted to all defendants with regard to the cause of action for unreasonable seizure because the Brighton Police Officers had probable cause to affect a mental hygiene arrest of Tosin due to her conduct. Since they had probable cause to arrest, the officers did not commit any wrongful act, whether intentional or negligent, in arresting Tosin. Probable cause exists "where an officer 'has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Harris v. County of Nassau*, 581 F. Supp. 2d 351, 355 (E.D.N.Y. 2008) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)).

Probable cause is an "absolute defense" to a claim of false or "unlawful" arrest. *Caldarola*, 298 F.3d at 161. *See also Harris* 581 F. Supp. 2d at 354-55. "Arguable probable cause exists where it was either *objectively reasonable* to believe that probable cause existed *or officers of reasonable competence could disagree on the existence of probable cause.*" *Id.* (emphasis added). *See also Martinez v. City of Schenectady*, 115 F.3d 111, 116 (2d Cir. 1997). Under New York law tort claims for unlawful arrest and unlawful imprisonment are identical. *Jacques v. Sears, Roebuck & Co.*, 30 N.Y.2d 466, 472-473 (1972). "The elements of a claim of false arrest under §1983 are substantially the same as the elements of a false arrest claim under New York law." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).

15


The existence of probable cause proves that the plaintiff was not subject to any "deprivation of liberty without due process" because the failure to challenge probable cause and accept an ACD satisfies all of the due process requirements of the Constitution.

In this case, Tosin had a full and fair opportunity to challenge probable cause through the criminal process. Tosin did not challenge the existence of probable cause, and instead opted to take an ACD. Since the lack of probable cause would be an essential element of unreasonable seizure summary judgment should be granted with regard to Tosin's cause of action for the unreasonable seizure of her person.

Because Tosin had the full and fair opportunity to challenge probable cause and she is now collaterally estopped from attacking the existence of probable cause in this civil case. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Collateral estoppel applies to cases where plaintiffs seek damages pursuant to 42 U.S.C. § 1983, and where the prior case was a criminal proceeding against the plaintiffs. *See id. See also DeFranco v. Town of Irondequoit*, 2009 WL 3822992, 2009 U.S. Dist. LEXIS 106824 (W.D.N.Y. Nov. 16, 2009) (Larimer, J.); *DeFranco v. Town of Irondequoit*, 2009 WL 2957813, 2009 U.S. Dist. LEXIS 82953 (W.D.N.Y. Sept. 11, 2009) (Payson, Magistrate Judge).

In light of the foregoing, summary judgment must be granted to the individual officers as their conduct was objectively reasonable.

### D. Plaintiff has Failed to Establish a Valid Claim Against Defendants For Being Transported to Strong Memorial Hospital

#### 1. No Cause of Action Against the Town Where No Policy Exists

The Second cause of action appears to claim that transporting Tosin to Strong Memorial Hospital, as opposed to Rochester General Hospital, was a violation of her constitutional rights. As noted above, in order to establish such a claim against a municipality under §1983, a Plaintiff must allege that the actions were taken under color of law; there was a deprivation of constitutional or statutory rights; causation; and damages. The Plaintiff is unable to meet any of the required elements. In the first instance, Plaintiff has not shown that the action was taken under the color of law. The Plaintiff has not pointed to any policy of the Town of Brighton regarding where an individual arrested under the Mental Hygiene Law must be transported. The Plaintiff merely alleges a single incident where an unnamed senior police officer on the scene allegedly told the ambulance crew to transport Tosin to Strong Memorial Hospital. As noted above, a single ad hoc decision does not constitute a policy under color of law. See *Brogdon v. City of New Rochelle*, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

As such, the cause of action fails to meet the first necessary element of the cause of action.

**2. No Cause of Action Where No Constitutional Violation Can Be Shown**

The second element requires a plaintiff to show there was a deprivation of constitutional or statutory rights. Neither the individual defendants nor the Town can be held liable where there is no clear constitutional or statutory violation. The Plaintiff here simply cannot show that choice of hospital is a constitutionally protected right. As noted above, the Town is not responsible under §1983 for an isolated act. *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003). "Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality],'" *Dellutri, supra*, 895

F.Supp.2d at 565 (quoting *Newton, supra,* 566 F.Supp.2d at 271).

### 3. No Cause of Action Where No Causation or Damages Can Be Shown

The Plaintiff can show neither causation nor damages as a result of Tosin being transported to Strong Memorial Hospital. Tosin was already resisting arrest and fighting the police officers as she did not want to be brought to any medical facility. In fact, Ogunbekun testified that he had an agreement with Officer Stickles that Tosin would be transported to Rochester General Hospital. So, the alleged injuries to Tosin, the laceration, concussion and bruising, all occurred before she was even loaded onto the ambulance for transport to Strong Memorial Hospital. In addition, Tosin was calm once she arrived at Strong Memorial Hospital, did not receive any medication, including no antipsychotics or antianxiety medications, and she was later released without incident. [See Rule 56 Statement, ¶106-109, Exhibit B]. Under these circumstances, there is no showing of either causation or damages related to her being transported to Strong Memorial Hospital as opposed to Rochester General Hospital. This failure to establish both causation and damages is fatal to the cause of action and requires summary judgment be granted.

### 4. No Cause of Action Against the Named Individual Officers As No Conduct On Their Part is Alleged

There can be no liability as to the Officers Stickles and Knutowicz as there is no alleged conduct on their part as to dictating where Tosin was going to be transported. According to the Second Amended Complaint and Ogunbekun's testimony, an unnamed senior police officer, not the R/O (which was Officer Stickles) directed the ambulance to go to Strong Memorial Hospital. [See Rule 56 Statement, ¶113, 115]. There is no allegation against Officer Knutowicz in this regard at all. As such, there is no evidence that either individually named officer took any action as to this

18

alleged constitutional violation.

> "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Id.* (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

*Pagan v. City of Rochester*, 17-CV-6073-CJS (W.D.N.Y. Sep. 13, 2017)(J. Siragusa), citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Where there is a lack of personal involvement by the named individual defendants, summary judgment must be granted for this failure.

## CONCLUSION

In light of the foregoing, the motion for summary judgment should be granted in its entirety and such other and further relief that the Court finds appropriate.

TULLY RINCKEY, PLLC

s/ *Eugene Welch*

Eugene Welch, Esq.
*Attorneys for Defendants*
Office and Post Office Address
400 Linden Oaks, Suite 110
Rochester, New York 14625
Telephone: (585) 899-1458
ewelch@tullylegal.com